UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MAX SHAW, personal representative | ) | |
| for the Estate of SANDRA SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-09-264-B-W |
| | ) | |
| 500516 N.B. LTD., d/b/a | ) | |
| STEWART"S TRANSFER, and | ) | |
| ADAM TOMPKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDED DECISION

This case is a wrongful death action brought by the Personal Representative of the Estate of Sandra Shaw. Shaw died as a result of injuries she sustained when the car in which she was a passenger collided with a dead moose in the roadway, and then with a tractor-trailer parked in the breakdown lane, of Interstate 95 in Howland, Maine. Adam Tompkins was the operator of the tractor-trailer and struck and killed the moose prior to Sandra Shaw's arrival on the scene. According to the complaint, Tompkins was acting as an agent within the scope of his employment for 500516 N.B. Ltd. d/b/a Stewart's Transfer. The Plaintiff has filed a motion for default judgment (Doc. No. 7) and the Defendants have filed a motion to dismiss (Doc. No. 11). The Court has referred both motions for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that the court deny both motions.

### BACKGROUND

The complaint in this case was filed on June 19, 2009. On July 2, 2009, plaintiff's counsel returned two executed summonses showing that Lawrence A. Lunn, a Bangor attorney and an agent who is designated by law to accept service of process on behalf of 500516 N.B.

LTD, was served with two summonses on June 25, 2009, one directed to Adam Tompkins and

the other directed to 500516 N.B. LTD d/b/a Stewart's Transfer.  Answers were due on July 15,

2009.  When no answers were forthcoming, plaintiff's counsel filed a motion for entry of default

and the motion for default judgment on July 16, 2009.  The clerk entered default the same day

and placed the motion for default judgment under advisement with the United States District

Court Judge.

On July 21, 2009, after reviewing the pleadings filed in this case, the Court expressed

concern about the validity of the service of process on Adam Tompkins and whether the Court

could properly accept the conclusory assertion that Lawrence A. Lunn was an appropriate agent

of the foreign corporation for purposes of service of process.  Plaintiff's counsel was given ten

days to respond to the order and clarify the record.  (Order on Mot. for Default J. at 2, Doc. No.

10.)  On July 24, 2009, Defendants filed their motion to dismiss the action for lack of personal

jurisdiction (for want of effective service) and for failure to state a claim.  (Doc. No. 11.)

Next, on July 31, 2009, plaintiff's counsel filed an affidavit in response to the Court's order.  The

affidavit explains that Defendant 500516 N.B. Ltd. has an arrangement with Process Agent

Service Co., Inc., of Sioux Falls, South Dakota (PASC), and that PASC serves as Defendant

500516 N.B.'s agent for nationwide service of process.  In turn, PASC has designated Attorney

Lawrence Lunn as its agent for the State of Maine.  (Clifford Supp. Aff. ¶¶ 7 & 9, Doc. No. 15;

Pl.'s Ex. 3, Doc. No. 15-4.)  Plaintiff's counsel relates that he also served process for both

Defendants on PASC in South Dakota, "[i]n order to eliminate questions relating to Mr. Lunn's

authority."  (Clifford Supp. Aff. ¶ 11.)  Attorney Lunn and a representative of PASC have

indicated to plaintiff's counsel that notice of service was promptly given to Defendant 500516. (Clifford Supp. Aff. ¶¶ 14 & 15; Pl.'s Ex. 4, Doc. No. 15-5; Pl.'s Ex. 6, Doc. No. 15-7.)[1]

Most recently, Plaintiff has returned another set of executed summonses. (Doc. No. 22 & 23.) The parties are in agreement that this latest service was effective service and the defendants have withdrawn their argument that the Court lacks personal jurisdiction over them now that they have been served in hand in this action by Canadian process servers. (Aug. 25, 2009, Status Report, Doc. No. 28.)

## A.    Motion for Default Judgment

On July 16, 2009, Plaintiff moved for entry of default and for default judgment. (Doc. No. 7.) Defendants filed their motion to dismiss eight days later. (Doc. No. 11.) In the meantime, the Court ordered, *sua sponte*, that Plaintiff supplement his motion for default judgment because his supporting affidavits were not sufficient to establish sufficient service of process upon either Defendant. (Doc. No. 10.) As of the present date, August 25, 2009, both parties agree that the Defendants have been effectively served for purposes of the Hague Convention, though there remains a legal dispute whether adequate service of process may have been effectuated earlier against Defendant 500516 N.B. Ltd. based upon the service directed to Attorney Lunn. This legal dispute was one of the subjects of Defendants' motion to dismiss and its opposition to the motion for default judgment, prior to service recently being made on the Defendants through Canadian process servers. In particular, in their motion to dismiss, which was filed one week before Plaintiff filed the supplemental affidavit requested by the Court in its *sua sponte* order, Defendants articulated a solid basis for Defendant Tompkins's failure to file a responsive pleading sooner and a tenable explanation for Defendant 500516 N.B.'s non-responsiveness. All

---

[1]    The plaintiff also served the Secretary of State of the State of Maine. (Doc. Nos. 13 & 14.) Plaintiff's counsel explains his service upon the Secretary of State as an effort to "resolve any ambiguities relating to the authority of defendant's agents Lunn and [PASC] to accept service" and that the Secretary serves as a statutory agent for process for all persons using Maine roads, pursuant to 29-A M.R.S. § 108. (Clifford Supp. Aff. ¶ 17.)

of this has transpired prior to the deadline for service of process, which is set for October 19, 2009.

Under these circumstances, the Court should simply set aside the Clerk's entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  Relevant factors for doing so include:

> (1) whether the default was willful;  (2) whether setting it aside would prejudice the adversary;  (3) whether a meritorious defense is presented;  (4) the nature of the defendant's explanation for the default;  (5) the good faith of the parties;  (6) the amount of money involved; and  (7) the timing of the motion.

McKinnon v. Kwong Wah Rest., 83 F.3d 498, 503 (1st Cir. 1996).  The decision rests within the sound discretion of the District Court.  Snyder v. Talbot, 836 F. Supp. 26, 28 (D. Me. 1993).  The standard is a liberal one, which is "in keeping with the philosophy that, if at all possible, actions should be decided on their merits." Id. at 29.  Defendant Tompkins obviously had good cause to contend that service upon Attorney Lunn, a process agent for his employer, was not sufficient service upon him, personally.  Defendant 500516 N.B. also appears to have raised its Hague Convention service defense in good faith.  Though the defense may not have presented a decisive barrier to this Court's exercise of jurisdiction, it at least reflects that Defendant 500516 N.B.'s non-responsiveness was not willful in the sense of showing "disrespect for the court," Snyder, 836 F. Supp. at 29, and Defendants have remained in communication with the Court concerning the effectiveness of service for some time now, including in the context of a prior action that was voluntarily dismissed by the Plaintiff.  (See Case No. 1:09-cv-148-JAW.)  Finally, Plaintiff will not suffer prejudice if the Clerk's default is set aside because there is no showing that the relatively minor delay that has transpired on account of service issues has undermined Plaintiff's ability to prove his case.

**B.**      **Motion to Dismiss**

As originally configured, Defendants' motion to dismiss raised two arguments:  lack of personal jurisdiction and failure to state a claim.  With the return of the Canadian-executed summonses on August 13, 2009, Defendants have withdrawn their jurisdictional defense.  They still press the contention that the complaint fails to state a claim.  (Aug. 25, 2009, Status Report, Doc. No. 28.)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint can be dismissed for "failure to state a claim upon which relief can be granted."  With respect to the sufficiency of the allegations, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  To decide a motion to dismiss, the court must accept as true all well-pleaded factual allegations, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint, so read, sets forth a "plausible entitlement to relief."  Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 48-49 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S 554, 559 (2007)).

Max Shaw, father of decedent Sandra Shaw and personal representative of her estate, alleges the following facts in support of his suit.  On June 26, 2007, Ms. Shaw was riding as a passenger in a vehicle driven by Kirk Sirois.  The vehicle in which Shaw and Sirois were travelling collided with a moose lying dead in the roadway, the moose having recently been struck by a tractor-trailer operated by Defendant Adam Tompkins, in agency to his employer, Defendant 500516 N.B. Ltd.  (Compl. ¶¶ 3, 6, 8, 9.)  Max Shaw alleges that the following acts or omissions demonstrate negligence on the part of Defendants:  (1) colliding with a moose in the roadway;  (2) leaving the moose in the roadway without illuminating it;  (3) pulling to the side of the road;  and (4) failing to put out warning signals.  (Id. ¶¶ 10-12.)  Max Shaw alleges that these acts of negligence causally contributed to the death of Ms. Shaw.  (Id. ¶¶ 10, 14.)  The alleged causal connection is that the vehicle in which Ms. Shaw was a passenger struck the moose carcass in the roadway and ultimately collided with the rear of the

5

Defendants' tractor-trailer.  Ms. Shaw was pronounced dead at the scene on account of injuries sustained from the impact.  (Id. ¶¶ 13-15.)

The Defendants argue that there is neither a duty to avoid collision with a moose nor a duty to warn others of the existence of a moose carcass in the roadway.  Alternatively, the Defendants argue that the Plaintiff cannot prove that the breach of such duties proximately caused the decedent's injuries.  The Defendants support both arguments with references to statements contained in a police report.  (Mot. to Dismiss Mem. at 10-12, Doc. No. 12.)

To prevail with a negligence claim, "a plaintiff must prove that a defendant had a duty to conform to a standard of care and that the breach of that duty proximately caused an injury to the plaintiff."  Lewis v. Knowlton, 1997 ME 12, ¶ 7, 688 A.2d 912, 913.  The duty that is involved in this case is the duty to exercise ordinary care, as in the measure of care that an ordinary, prudent person would observe under the same circumstances.  Whether a defendant has failed to observe ordinary care under the circumstances is a fact question for the jury.  Id., 1997 ME 12, ¶¶ 9-10, 688 A.2d at 914.  "[T]he care which ordinarily prudent and careful persons take is commensurate with the necessity for care and the dangers of the situation."  Gravel v. LeBlanc, 131 Me. 325, 328, 162 A. 789, 790 (1932).  The duty of ordinary care defies "arbitrary definition."  Id.  The Defendants wish to depict the circumstances with greater precision by referencing statements and opinions made in a police report, but consideration of materials outside the pleadings is not the standard procedure for judging whether the allegations are minimally sufficient to state a claim.  Greenier v. Colgan Air, Inc., 295 F. Supp. 2d 123, 124 (D. Me. 2003).  Ultimately, it is at least plausible that a set of facts could exist that would justify a finding that the Defendants' actions or omissions departed from the measure of care that an ordinary, prudent person would observe in identical circumstances.

**CONCLUSION**

For the reasons set forth above, I RECOMMEND that the Court DENY the Plaintiff's Motion for Default Judgment (Doc. No. 7) and, instead, set aside the Clerk's entry of default.  I further RECOMMEND that the Court DENY the Defendants' Motion to Dismiss (Doc. No. 11).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 27, 2009

7