UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MAX SHAW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-09-264-B-W |
| | ) | |
| 500516 N.B. LTD., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AFFIRMING THE
RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

On August 27, 2009, the United States Magistrate Judge filed with the Court her Recommended Decision. *Report and Recommended Decision* (Docket # 29) (*Recommended Decision*). Max Shaw filed objections to the Recommended Decision on September 11, 2009. *Objection to Report and Recommended Decision* (Docket # 30) (*Pl.'s Objection to Recommended Decision*). 500516 N.B. Ltd. (N.B.) and Adam Tompkins filed their response on September 28, 2009. *Response to Objection to Report and Recommended Decision* (Docket # 31) (*Defs.' Response to Objection*). The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, and has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision. Because the Court did not have personal jurisdiction over Mr. Tompkins before default entry and there is good cause under Federal Rules of Civil Procedure Rule 55(c) to remove the default entered against N.B., the Court affirms the Magistrate Judge's Recommended Decision over the objections of the Plaintiff.[1]

---

[1] The Defendants have not challenged the Magistrate Judges recommendation to deny their motion to dismiss. *Defs.' Mot. to Dismiss* (Docket # 11). The Court affirms the Magistrate Judge's recommendation to deny Defendant's Motion to Dismiss for the reasons stated in the Recommended Decision.

I.      **STATEMENT OF FACTS**

A.      **Shaw v. Stewart's Transfer:  Docket Number 09-148**

The genesis of this case can be traced to March 6, 2009, when Max Shaw filed a complaint in Penobscot County Superior Court against Stewart's Transfer and Adam Tompkins, arising out of a tragic accident that took place on I-95 in Howland, Maine in which Sandra Shaw, the Plaintiff's daughter, lost her life.  *Notice of Removal* at Ex. 3, Civil No. 09-148-B-W (Docket # 1) (*Notice of Removal*).[2]  The Complaint alleged that a Freightliner truck owned by Stewart's Transfer and operated by Mr. Tompkins struck a moose, and that Mr. Tompkins negligently left the moose in the roadway, and failed to put up warning signals, illuminate the moose, or take other steps to warn other drivers of the hazard.  *Id.* at ¶ 7, 8. 9, 10.

Sandra Shaw was riding as a passenger southbound on I-95 in a motor vehicle operated by Kirk Sirois.  *Id.* at ¶ 6.  Mr. Sirois failed to notice the moose, stuck it, and then struck the rear of Mr. Shaw's truck, causing Ms. Shaw's death.  *Id.* at ¶ 11, 12.  On behalf of his daughter and her estate, Mr. Shaw asserted claims of wrongful death, conscious pain and suffering, and a survival action against both Defendants.  *Id.* at ¶¶ 17-26.  On April 16, 2009, the Defendants removed the case to this Court.  *Notice of Removal*.

Upon removal, both the Plaintiff and the Defendants raised jurisdictional issues.  The Plaintiff moved to have the case remanded to state court and the Defendants moved to dismiss the case on jurisdictional grounds and for failure to state a claim.  *Pl.'s Mot. for Remand*, Civil No. 09-148-B-W (Docket # 8); *Defs, Stewarts's Tranfer's and Adam Tompkins' Mot. to Dismiss Pl.'s Comp.*, Civil No. 09-148-B-W (Docket # 9).  On May 28, 2009, the Plaintiff withdrew the motion for remand.  *Withdrawal of Mot. to Remand to State Court*, Civil No. 09-148-B-W

---

[2] Docket numbers that refer to the prior litigation include the full Civil Number to distinguish them from references to documents in the current action.

(Docket # 14).  On June 22, 2009, the Magistrate Judge gave notice that she had scheduled a hearing on the motion to dismiss for July 22, 2009, and that the issues would include argument and any evidence the parties wished to present on whether service of process complied with the Hague Convention.  *Notice of Hearing*, Civil No. 09-148-B-W (Docket # 24).  On June 17, 2009, the Plaintiff filed an emergency motion to extend time for 120 days within which to complete service of process.  On June 19, 2009, the Magistrate Judge reserved ruling on the emergency motion, and the same day, the Plaintiff filed a voluntary dismissal of the lawsuit.  *Notice of Voluntary Dismissal*, Civil No. 09-148-B-W (Docket # 30).

### B.      Shaw v. 500516 N.B., LTD and Adam Tompkins:  09-264-B-W

On the very same day, Mr. Shaw dismissed one case against Stewart Transfer and Mr. Tompkins, he initiated a new one.  *Compl.* (Docket # 1).  This time he named as defendants 500516 N.B. LTD, doing business as Stewart's Transfer, as well as Mr. Tompkins.  No one appeared on behalf of either defendant, and on July 16, 2009, Mr. Shaw moved for entry of default, which was duly entered the same day.[3]  *Mot. for Default and Default J. Against Defs.* (Docket # 7) (*Mot. for Default*); *Order Granting Mot. for Entry of Default* (Docket # 9).  Mr. Shaw's motion for default judgment was ripe for resolution.

Nevertheless, on July 21, 2009, the Court deferred issuing a default judgment and *sua sponte* questioned the adequacy of service of process on the two defendants.  *Order on Mot. for Default J.* (Docket # 10) (*Order on Mot.*).  The Order required Mr. Shaw to respond within ten days.  *Id.* at 5.  Meanwhile on July 24, 2009, Defendants filed an appearance by moving to dismiss for lack of personal jurisdiction and failure to state a claim.  *Defs.' Stewart's Transfer's and Adam Tompkins' Mot. to Dismiss* (Docket # 11) (*Defs.' Mot. to Dismiss*).  Further, on

---

[3] The Court was unaware of the prior cause of action, since the earlier action had been handled exclusively by the Magistrate Judge and the new filing was not cross-referenced with the dismissed lawsuit.

August 3, 2009, Defendants opposed the Plaintiff's motion for default judgment on jurisdictional grounds, not on grounds of notice. *Defs.' Stewart's Transfer's and Adam Tompkins' Opp'n to Pl.'s Mot. for Default J.* (Docket # 16) (*Defs.' Opp'n*). On July 31, 2009 Mr. Shaw provided affidavits with additional information about the service of process on the two Defendants. *Aff. of Peter Clifford* (Docket # 15) (*Aff. of Clifford*).

### C.  The Recommended Decision

On August 27, 2009, the Magistrate Judge recommended that the Court deny Mr. Shaw's motion for default judgment and set aside the entry of default as to both Defendants. *Recommended Decision* at 7.  The Magistrate Judge concluded that Mr. Tompkins "obviously had good cause to contend that service upon Attorney Lunn, a process agent for his employer, was not sufficient service upon him, personally." *Id.* at 4.  Similarly, she concluded that "N.B. appears to have raised its Hague Convention service defense in good faith." *Id.*  She found that the Defendants' failure to respond did not reflect "disrespect for the court." *Id.* (quoting *Snyder v. Talbot*, 836 F. Supp. 26, 29 (D. Me. 1993)).  In the absence of prejudice to Mr. Shaw, she recommended the Court exercise its discretion in favor of trial on the merits and set aside the entry of default. *Id.*

## II.  PLAINTIFF'S OBJECTIONS

Mr. Shaw lists eight objections to the Magistrate Judge's Recommended Decision, which can be grouped into two general categories:  (1) that the Court had personal jurisdiction over both defendants so that the default entry was valid (Objections # 2-5); and, (2) that proper analysis of "good cause" under Rule 55(c) leads to the conclusion that default entry should not be overturned (Objections # 1, 5-8). *Pl.'s Objection to Recommended Decision* at 2-3.

### A.  Validity of Default Entry

4

### 1.     Defendant Tompkins

Mr. Shaw argues that service on Attorney Lunn on June 25, 2009 and service on PASC on June 28, 2009 were valid under Rule 4(e)(2)(C) in regards to Mr. Tompkins.  Specifically, Mr. Shaw contends that because Mr. Tompkins did not contest this issue by affidavit, "presumably, Attorney Lunn was authorized to accept service for employees of 500516 N.B., Ltd."  *Id.* at 2.

The presumption, however, cuts the other way.  The general rule is that Attorney Lunn's authorization to accept service for N.B. does *not* authorize him to accept service for N.B.'s employees.  *Order on Mot.* at 3-4 (citing 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1097, at 536-39 (3d ed. 2002)) ("The cases dealing with agency by appointment indicate that an actual appointment for the specific purpose of receiving process normally is expected.").  In its July 21, 2009 Order, the Court gave Mr. Shaw 10 days to submit additional evidence to prove that Attorney Lunn was authorized to accept service of process on behalf of Mr. Tompkins.  Neither Mr. Shaw's response of July 31, 2009 nor his Objection to the Magistrate Judge's Recommended Decision provides any additional information on this issue.[4]  Mr. Tompkins has now affirmatively denied authorizing Attorney Lunn to accept service on his behalf.  *Defs.' Response to Objection* at 9.  Absent such a showing, the general rule applies and service to Mr. Tompkins was ineffective under Rule 4(e)(2)(C).

Mr. Shaw provides no reason the Court should treat service on PASC differently.  The basis for jurisdiction—that N.B., Mr. Tompkins's employer, designated PASC the agent for service of process for the company—is the same.  In fact, Mr. Shaw admits that PASC "rejected

---

[4] Mr. Shaw alleges that Mr. Tompkins was an employee, not a contractor.  The Court's July 21, 2009 Order assumed that Mr. Tompkins was Stewart's employee.  *Order on Mot.* at 3 (stating that "[t]he question narrows to Rule 4(e)(2)(C), which addresses service upon an agent, and whether Mr. Shaw properly served Mr. Tompkins, who is employed by NB.") (emphasis added).

Plaintiff's efforts to serve Adam Tompkins, and sent the Tompkins paperwork back." *Aff. of Clifford* at 3. Mr. Shaw has established no factual basis for his bare assertion that Mr. Tompkins authorized PASC to accept service of process on his behalf.

Because service on Attorney Lunn and PASC did not give the Court personal jurisdiction over Mr. Tompkins, the default entered on July 16, 2009 was invalid as to Mr. Tompkins. *See, e.g.*, *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (holding that a judgment, including a default judgment, is void if entered without personal jurisdiction); *Hugel v. McNell*, 886 F.2d 1, 3 n. 3 (1st Cir. 1989) (mentioning that lack of appearance did not waive ability to contest personal jurisdiction); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002) ("To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'" (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999))).

## 2. Defendant N.B.

Mr. Shaw argues that regardless of the Court's conclusion as to Mr. Tompkins, service on PASC and Attorney Lunn, N.B.'s designated agents for service of process, gave the Court personal jurisdiction over N.B. Mr. Shaw contends that N.B. cannot invoke the Hague Convention as a defense because N.B. appointed a "domestic service of process agent." *Pl.'s Objection to Recommendation* at 7. The Court agrees.

In its Order on Motion for Default Judgment, the Court acknowledged that "Mr. Shaw may have effected service upon N.B." but sought additional assurances from Mr. Shaw that Attorney Lunn was in fact the registered agent for N.B. in Maine. *Order on Mot.* at 5. Mr. Shaw provided such assurances in his July 31 Affidavit. *Aff.* of *Clifford* at 3-4, Ex. 3, Ex. 4 (specifically alleging and documenting that PASC is the registered agent for N.B. and Attorney

Lunn represents PASC in the State of Maine).  In its Response to the Plaintiff's Objections to the Recommended Decision, N.B. effectively acknowledged that Attorney Lunn was N.B.'s agent for service of process.  *Defs.' Response to Objection* at 10 (describing the jurisdictional question as "whether the service of process on Attorney Lunn was sufficient to confer personal jurisdiction over Stewart's Transfer," not whether Attorney Lunn was, in fact, the appointed agent).  With these additional filings, the Court is convinced that Mr. Shaw effected service upon N.B. by serving Attorney Lunn, N.B.'s designated agent for service of process.[5]

N.B. contends that its agent designation is beside the point because service on the agent does not subject "a corporation with no other contacts with the state to *in personam* jurisdiction."  *Id*. at 9 (quoting *Sandstorm v. Chemlawn Corporation*, 727 F. Supp. 676, 679 (1989)) (holding that designating an agent to receive service of process does not mean "submission to *in personam* jurisdiction").  N.B. argues that the Court does not have personal jurisdiction because N.B. did not transact sufficient "business within the State of Maine" to establish minimum contacts.[6]  *Defs.' Response to Objection* at 9.

---

[5] Because the Court finds that service on Attorney Lunn was valid in regards to NB, the Court does not reach the effectiveness of service on PASC.

[6] When an issue of personal jurisdiction arises, the plaintiff bears the burden of persuading the court that jurisdiction exists.  *See, e.g*., *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Mass. Sch. of Law at Andover, Inc. v. Amer. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).  The First Circuit allows a district court to "choose from among several methods for determining whether the plaintiff has met this burden."  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002).  Here, the Court uses the "prima facie method," rather than adjudicating jurisdictional facts.  *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145-47 (1st Cir. 1995).  Using the prima facie method, the Court must consider "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  *Daynard*, 290 F.3d at 51 (internal quotations omitted).  In making this determination, the Court accepted "the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."  *Foster-Miller*, 46 F.3d at 145 (internal quotations omitted).  To make his prima facie jurisdictional case, Mr. Shaw relied solely upon the allegations in his complaint.  The First Circuit wrote in *Foster-Miller* that "[t]o make a prima facie showing of this calibre, the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts."  *Id.*  Here, even though the Plaintiff rested on the pleadings, the Court will assume the allegations critical to jurisdiction to be accurate, since there is no suggestion that the accident did not take place in the state of Maine and did not take place generally the way Mr. Shaw claims it did.

The Court disagrees.  The Court has personal jurisdiction pursuant to Maine's long-arm statute.  14 M.R.S.A. § 704-A (2003).  The accident with N.B.'s truck occurred in Maine and Mr. Shaw has alleged that N.B. conducts "regular does business in the State of Maine."  *Compl*. at 2. Maine courts have consistently held that such contacts are sufficient for Maine long-arm jurisdiction.  *See, e.g.*, *Fortin v. Les Enterprises Pascal Rodrigue, Inc*., No. 02-015, 2002 WL 31235990, at *2 (Me. Super. September 10, 2002) (finding personal jurisdiction over a Canadian trucking company because the injury to plaintiff occurred in Maine and the plaintiff alleged that the company regularly conducted business in Maine); *Caluri v. Rypkema*, 570 A.2d 830 (D. Me. 1990) (finding minimum contacts over trucking company who did no trucking in Maine but contracted for marketing services with a resident from Maine); *but cf. Martin v. Deschenes*, 468 A.2d 618 (Me. 1983) (finding no minimum contacts when a driving accident occurring outside of Maine injured a Maine resident); *Dufour v. Smith & Hamer, Inc*., 330 F. Supp. 405 (D. Me. 1971) (finding no jurisdiction over truck company operating out of Canada because accident occurred in Canada and other minimum contacts were not alleged).  Although N.B. contends that it does not conduct business in Maine, it has not provided evidence to refute Mr. Shaw's claim. *See, e.g.*, *Commerce Bank & Trust Co. v. Dworman,* 2004 ME 142, ¶ 8, 861 A.2d 662, 664 (Me. 2004) (holding that although plaintiff bears initial burden of proving personal jurisdiction, plaintiff need only make a prima facie showing).  N.B.'s contention to the contrary is contradicted by the fact that N.B.'s truck was operating in Maine at the time of the accident.

Mr. Shaw is also correct that service of process need not conform to the Hague Convention.  Although the Hague Convention "pre-empts inconsistent methods of service prescribed by state law," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) (*Schlunk*), the Convention, by its own terms, only applies to service made abroad.  20

8

U.S.T. 362, 362, T.I.A.S. 6638, Art. 2.   Mr. Shaw did not serve N.B. abroad and was not required to do so under Maine law.   Me. R. Civ. P. 4(d) (9) (allowing service on a foreign corporation by delivering a copy to an "agent or attorney in fact authorized by appointment or by statute to receive or accept service on behalf of the corporation"); *Schlunk*, 486 U.S. at 702-704 (holding that state law determines whether service abroad was necessary even though the goals of the Convention might be undermined).

Because the Court has long-arm jurisdiction over N.B. and N.B. was properly served through Attorney Lunn, the default entered against N.B. is valid.   The Court turns to whether there is nonetheless "good cause" to set aside default.

### B.      Application of the "Good Faith" Standard in Rule 55(c)

Mr. Shaw agrees with the Magistrate Judge that the good cause analysis under the Federal Rules is "case specific" and that the relevant factors include:

> (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion.

*McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 503 (1st Cir. 1996); *Schmir v. Prudential Ins. Co. of Am.*, 220 F.R.D. 4, 5 (D. Me. 2004); *Pl.'s Objection to Recommendation* at 4.   Mr. Shaw objects, however, to the Magistrate Judge's conclusion that good cause factors were met.

In making its own assessment, the Court keeps in mind the "competing policies and values that underlie the concept of default."   *KPS & Associates, Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (*KPS*).   On the one hand, default is a useful tool "when a litigant is confronted by an obstructionist adversary," maintains efficiency, creates an "incentive for parties to comply with court orders," and "encourages the expeditious resolution of litigation and promotes finality."   *KPS*, 318 F.3d at 12-13 (internal quotations and citations ommitted).   On the

other hand, "countervailing considerations include the goals of resolving cases on the merits, and

avoiding "harsh or unfair results." *Id.* at 13 (internal quotations and citations ommitted).  In

keeping with the basic tenant that "actions should ordinarily be resolved on their merits," the

First Circuit instructs that a liberal standard for default removal is particularly appropriate early

on in cases when default entry, as opposed to default judgment, is at issue.  *Coon v. Grenier*, 867

F.2d 73, 76 (1st Cir. 1989).

### 1.      Justification for the Default

Three *McKinnon* factors—the nature of the defendant's explanation, the willfulness of

the default, and the good faith of the parties—relate to the adequacy of the justification for the

defendants' default.

### a.      Explanation for Default

N.B. has never explained why it did not file an answer.  Like Mr. Shaw, the Court

assumes that N.B. failed to answer because it contested the validity of the Court's personal

jurisdiction.  In other words, N.B. was so confident of its jurisdictional argument that it allowed

default to be entered, trusting that the Court would itself discover the jurisdictional issues before

issuing default judgment.  If so, N.B.'s inaction remains inexplicable because a defendant is not

required to choose between timely answering a complaint and positing a jurisdictional defense.

Mr. Shaw sensibly contends that N.B. has no explanation because it should have

contested jurisdiction by timely motion, rather than non-action.  However, unlike cases in which

defendants proffer no excuse for default, at least N.B. had a theory—that the Court would find

insufficient personal jurisdiction to sustain default entry—albeit a losing one.  *Cf. General

Contracting & Trading Co., LLC v. Interpole*, 899 F.2d 109, 112 (1st Cir. 1990) (finding that

defendant defaulted because it had simply "misplaced" the suit papers) (*General Contracting*);

*Bergeron v. Henderson*, 185 F.R.D. 10, 13-14 (D. Me. 1999) (finding that defendant did not respond because it "did not understand the Summons' gravity").  If N.B. had been correct, entry of default against it would have been invalid, as it was in relation to Mr. Tompkins.

Nevertheless, the Court agrees with Mr. Shaw that N.B.'s poor tactical choice does not provide good cause for setting aside the entry of default.  *Curtin v. Proskauer, Rose Goetz & Mendelsohn Group Long Term Disability Plan*, No. 01-269-P-C, 2002 WL 273300, at *2 (D. Me. Feb. 27, 2002) (finding that the carelessness on the part of the lawyer "does not constitute good cause"); *Lucerne Farms v. Baling Technologies, Inc.*, 208 F.R.D. 463, 465 (D. Me. 2002) (finding that misunderstanding of local rules constitutes "unacceptable nonchalance" and does not excuse default ); *cf. Leshore v. County of Worcester*, 945 F.2d 471 (1st Cir. 1991) (finding good cause when the only attorney in the county was sick); *Thiemann v. Electrical Insulation Suppliers, Inc.*, 180 F.R.D. 200 (D. Puerto Rico 1998) (finding good cause when defendant was not given actual notice).  Absent willfulness, however, "the Court may excuse an attorney's carelessness toward the rules."  *Lucerne Farms*, 208 F.R.D. at 465-466.

### b.      Willfulness of the Default

The crux of Mr. Shaw's objection is that N.B. defaulted willfully because it had actual knowledge of the complaint but "consciously chose not to file an answer or any other responsive pleading on time."  *Pl.'s Objection to Recommended Decision* at 5.  Mr. Shaw argues that common practice is to uphold default entries against defendants who made similar deliberate choices not to file an answer.  *Id.* at 4-5 (citing *United States v. Ponte*, 246 F. Supp. 2d 74 (D. Me. 2003) and *Paramount Packing Corp. v. H.B. Fuller Co.*, 190 F. Supp. 178 (D. Pa. 1960)).

Courts tend to view a default as "willful" when the defendant shows contempt for the court's procedure or an effort to evade the court's authority.  *Lucerne Farms*, 208 F.R.D. at 466

11

(citing *Coon*, 867 F.2d at 76 (finding no willfulness where defaulting defendant did not try to conceal his whereabouts or evade service)); *cf. Ponte*, 246 F. Supp. 2d at 81 (finding willfulness where Defendant refused to get post office box or retain counsel, effectively preventing the litigation from proceeding).

Although N.B.'s failure to file a timely answer appears to have been deliberate, there is no evidence that N.B. intended to disrespect the Court or avoid litigation.  N.B. fully participated in the prior litigation with Mr. Shaw and, except for defaulting, has cooperated quickly and fully in the current proceedings.  *Snyder*, 836 F. Supp. at 29 (D. Me. 1993) (holding that cooperation and communication with the court meant no willfulness); *cf. Paramount Packing Corp*., 190 F. Supp. at 181 (holding that lack of participation meant lack of respect).  In addition, N.B. has not attempted to evade litigation.  Although maintaining the necessity of service in Canada, there is no allegation that Mr. Shaw could not locate N.B. or that N.B. attempted to avoid service.  In fact, both parties now agree that subsequent service in Canada has established personal jurisdiction over N.B.

The Court acknowledges that N.B.'s default is slightly unique because it was not accidental.  Absent evidence of bad faith, however, the Court finds N.B.'s actions more in-line with instances of carelessness than willful disobedience.

### c.    Good Faith of the Parties

Similarly, the Court can find no indication that N.B. acted in bad faith.  Mr. Shaw contends that lack of response despite knowledge of the claim necessarily means bad faith.  The Court disagrees.  The Court has no reason to conclude that N.B.'s jurisdictional objection was a ruse.  N.B. maintained from the outset that Hague Convention rules govern service of process. Now that process has been served pursuant to Hague Convention requirements, N.B. has

consented to jurisdiction.  Although ultimately a losing argument, the Court finds the argument not so meritless that it necessitates a conclusion that N.B. held them in bad faith.

Good faith is also shown in N.B.'s other interactions with the Court.  N.B. fully participated in prior litigation and, other than its mystifying action in allowing the default, has given every indication of doing so in this litigation as well.  The Court finds it particularly significant that N.B. responded quickly to the entry of default.  *See, e.g.*, *Lucerne Farms*, 208 F.R.D. at 466 (finding confirmation in the good faith of Defendant when response filed five days after default); *Coon*, 867 F.2d at 77-78 (counseling leniency where the plaintiff set a "leisurely" filing pace and defendant moved to vacate default immediately).

### 2.    Prejudice of the Default

Mr. Shaw contends that he suffered prejudice from "the lengthy, burdensome delays" from the Defendants' procedural maneuverings.  *Pl.'s Objection to Recommended Decision* at 9. He argues that these maneuverings are a continuation of maneuverings from the earlier companion case and, taken as a whole, are significant.  Mr. Shaw finds further confirmation that the "delay has been substantial" in the fact that the Maine statute of limitations is two years.  *Id*.

The First Circuit, however, specifically held that it will "not infer prejudice merely from the passage of the amount of time involved here."  *Coon*, 867 F.2d at 77 (responding to a delay of approximately two months).  Instead, the First Circuit requires actual prejudice, such as "witnesses have died, that memories have dimmed beyond refreshment, that some discovery scheme has been thwarted, or that evidence has been lost," and counsels that a delay in time is particularly harmless when previous litigation has already lasted for several years.  *Id*.

Mr. Shaw has pointed to no prejudice beyond the passage of time.  In addition, the existence of a prior companion case cuts the other way, making the minimal delay at issue

particularly harmless.  Removal of default entry will not cause the claim to be time-barred by the statute of limitations and Mr. Shaw himself elected to bring his claim towards the end of the statutory period.  The Court finds that setting aside the default judgment will not prejudice Mr. Shaw.

### 3.    Meritorious Defense

The Court can only set aside an entry of default if it finds that the defendant has a meritorious defense.  *Business Credit Leasing, Inc. v. City of Biddeford*, 770 F. Supp. 31, 35 (D. Me. 1991).  The First Circuit, however, has described this requirement as an easy one to meet.  *Coon*, 867 F.2d at 77 (finding that to meet the meritorious defense component of the good cause test "a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense").  Thus, the Court in *Coon* found a meritorious defense even though the defendant admitted it was a "slender reed."  *Id*.

N.B. clears this low bar.  N.B. argues that Mr. Shaw cannot prove that Mr. Tompkins had an affirmative duty to avoid hitting the moose or to warn others of the existence of the moose; that Mr. Tompkins breached this duty; and that hitting the Freightliner truck, as opposed to the moose, caused the injuries.  Because facts could exist that would prevent Mr. Shaw from proving liability and causation, N.B. has a meritorious defense for purposes of Rule 55(c).

### 4.    Amount of money involved

The amount of money at stake is significant.  In granting removal on diversity grounds, the Court recognized that Mr. Shaw's claim is worth more than $75,000, and the tragic details of the car crash suggest that the potential damages could well be in excess of the statutory minimum.  The potential value of the claim favors N.B. and counsels against default.  *See, e.g*.,

*Ponte*, 246 F. Supp. 2d at 81 (finding that the value of the land at issue counseled against default, despite ultimately concluding default was proper based on Defendant's willfulness).

### 5.    Timeliness of the Motion to Overturn Default

Mr. Shaw only briefly mentions timeliness.  He argues that, like defendants in *Ponte*, "Defendants had full notice that they had been served, but waited a long time to make a request to set aside the default."  *Pl.'s Objection to Recommended Decision* at 6.

N.B., however, raised its jurisdictional objections approximately one week after default entry and moved to remove default two and a half weeks later.[7]  Courts have found that similar delays were minimal and sufficiently timely for purposes of Rule 55(c); generally, courts have refused to set aside defaults only when the period of delay was in terms of months, not days or weeks.  *See, e.g.*, *Bergeron*, 185 F.R.D. at 13 (holding that motion filed less than a week after default was timely and less likely to prejudice plaintiff); *Lucerne Farm*, 208 F.R.D. at 467 (finding a response timely when motion for relief filed five business days after default); *but cf. Morgan v. Hatch*, 118 F.R.D. 6, 9 (D. Me. 1987) (holding that 6 weeks constitutes excessive delay absent explanation); *Reynolds v. Bar Harbor Whale Watch Co.*, No. 00-102-B-H, 2001 WL 26205, at *4 (D. Me. Jan. 9, 2001) (finding the crucial fact for upholding default to be that defendant waited four months before moving to set it aside); *General Contracting*, 899 F.2d at 112 (upholding default where defendant waited three and a half months before moving to set it aside).

### B.  Motion to Strike and Motion for Leave to File Reply

The Magistrate Judge issued her Recommended Decision on August 27, 2009 and Max Shaw objected on September 11, 2009.    *Recommended Decision*; *Pl.'s Objection to*

---

[7] When measured in relation to the Court's Order on Motion for Default Judgment, the Defendants' response time is even shorter.  Defendants filed their Motion to Dismiss only three days after the Order and moved to remove default entry approximately two weeks later.

*Recommended Decision.*   N.B. filed its response on September 28, 2009.   *Defs.' Response to Objection.*   On October 6, 2009, Mr. Shaw filed a reply.   *Pl.'s Reply in Support of Objections to Report on Default J.* (Docket # 32) (*Pl.'s Reply*).   On October 9, 2009, N.B. moved to strike the reply and the same day, Mr. Shaw moved for leave to file a reply.   *Defs.' Mot. to Strike Pl.'s Reply in Support of Objections to Report on Default J.* (Docket # 33) (*Defs.' Mot. to Strike*); *Pl.'s Mot. for Leave to File Reply Under Local Rule 72.1* (Docket # 34) (*Pl.'s Mot. for Leave*).

Local Rule 72.1 addresses objections to a recommended decision of a United States Magistrate Judge and allows an objection and a response.   It states:   "Except by prior order of the court, no reply memorandum shall be filed."   D. Me. Local Rule 72.1.   Mr. Shaw's filing of a reply without obtaining a prior order of the Court violates this local rule.

In his motion for leave, Mr. Shaw blames what he says is ambiguity in the language of the local rules.   He asserts that "Local Rule 7(c) appears somewhat inconsistent with Local Rule 72.1, to the extent that a reply is permitted."   *Mot. for Leave* at 1.   The Court disagrees.   There is no inconsistency.   Local Rule 7(c) applies to "Motions and Memoranda of Law" and allows a reply after the filing of an objection to a motion, but it is limited to "replying to new matter raised in the objection or opposing memorandum."   D. Me. Local Rule 7(c).   Local Rule 72.1 expressly applies to objections to a magistrate judge's recommended decision and disallows a reply without prior leave of court.

The distinction between a motion and an objection to a recommended decision could not be clearer.   In his initial motion for default, Mr. Shaw had two opportunities to explain the basis of his motion.   *Mot. for Default*; *Aff. of Clifford.*   Local Rule 7(c) allows a reply because the moving party has not had a chance to respond to the specific arguments being made by the non-movant.   After the Recommended Decision, however, the situation is markedly different.   In his

objection, Mr. Shaw was able to explain his contentions against the backdrop of a fully briefed motion and a thoughtful and explicit opinion.  *Pl.'s Objection to Recommended Decision.*  The Local Rules contemplate that for objections to recommended decisions, an objection should be sufficient and no reply warranted, since the parties are fully aware of what each other has contended and, more to the point, what the magistrate judge has recommended.  Ordinarily, no new matters should arise that require a reply.

Here, to the extent Mr. Shaw's reply responds to new matters or clarifies asserted factual inaccuracies in N.B.'s response, the Court would have granted the motion for leave to file late reply and does so now.  However, to the extent the reply responds to previously made arguments, the Court would not have granted the motion and denies it now.

### C.  Final Comment

The Court will not leave this tangled matter without expressing its frustration with the conduct of counsel.  Peter Clifford, counsel for the Plaintiff, filed the first lawsuit on April 16, 2009; on April 23, 2009, Christopher P. Flanagan entered his appearance on behalf of both Stewart's Transfer and Adam Tompkins.  Within a brief period, the parties filed a flurry of motions, including one self-titled "emergency motion" each, hotly contesting each other's positions on service of process and jurisdiction and necessitating the repeated intervention of the Magistrate Judge.  Suddenly, with dueling motions pending and a hearing scheduled, Mr. Clifford dismissed the case without prejudice.

On the very same day, he filed this new action, again against Adam Tompkins, but this time against 500516 N.B. Ltd, d/b/a Stewart's Transfer as the corporate defendant.  He served Attorney Lunn on June 26, 2009, and Mr. Lunn wrote to Attorney Flanagan the same day, informing him that he would not be entering his appearance on behalf of Stewart.  *Aff. of*

*Clifford*, Ex. 6.  Mr. Clifford was in email touch with Mr. Flanagan between July 6 and July 8, affirming that an answer would be due soon and that he understood that the adequacy of service of process remained an issue.  *Id.* at Ex. 7.  When neither Defendant answered by July 15, 2009, Mr. Clifford immediately moved for entry of default, but there is no indication in a certificate of service or otherwise that he notified Mr. Flanagan of the motion.  *Mot. for Default*.  The Court, sensing that something was not quite right and unaware of the prior lawsuit, issued an Order requiring Mr. Clifford to document proper service of process.  *Order on Mot.*  Three days after the Order, Mr. Flanagan filed a motion to dismiss virtually identical to the motion he had filed in the previous cause of action.  *Defs.' Mot. to Dismiss.*

Neither counsel has done themselves any favors with the Court.  Despite the fact he had been placed on notice by Mr. Clifford that the time for filing an answer was near, Mr. Flanagan simply did nothing.  He inexplicably decided not to answer, to move to extend the time within which to answer, or to file a timely motion to dismiss.[8]  He simply let the time run and passively allowed a default to enter against the Defendants, a default which has caused considerable legal mischief.  Mr. Flanagan could easily have predicted what was going to ensue.  Because avoiding this legal snarl would have been so simple, it remains baffling that he elected to run the risk of default and to rely on the Court's discretion in setting aside the default.

By contrast, Mr. Clifford's decision to press for default in these highly unusual circumstances without copying Mr. Flanagan with the motion seems unusually aggressive.  Mr. Flanagan had entered an appearance and fully defended the prior lawsuit, and he apparently had

---

[8] Mr. Flanagan was required to file a responsive pleading by July 15, 2009.  On July 16, 2009, Mr. Clifford moved for default and default judgment.  *Mot. for Default*.  On July 24, 2009, Mr. Flanagan moved to dismiss.  *Defs.' Mot. to Dismiss.*  If Mr. Flanagan had simply filed the motion to dismiss by July 15, 2009, the motion would have altered the period for response and no default would have entered.  Fed. R. 12(a)(4).  Alternatively, he could have elected to answer the complaint with a motion to dismiss under Rule 12(b)(2) or, if he needed more time to prepare the motion to dismiss, he could have moved to extend the time within which an answer would have been due and then filed the motion to dismiss on July 24, 2009.  Instead, he did nothing and thus required the Court to do a great deal.

been successful in obtaining a dismissal.  The two lawyers had also communicated about the newly-filed lawsuit.  Mr. Clifford had to know that N.B. had indicated "a clear purpose to defend the suit," which under First Circuit law makes his demand for default—particularly without notice to Mr. Flanagan—questionable.  *Key Bank of Maine v. Tablecloth Textile Co., Corp.*, 74 F.3d 349, 353 (1st Cir. 1996); *Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 302-03 (D. Me. 2008); *Venture Partners LLC v. River Rim LLC*, No. 07-213-P-H, 2008 WL 355561, at *1 (D. Me. Feb. 7, 2008) (observing that "[t]he plaintiff has shown that it gave appropriate notice to the defendants' lawyer that it made a request for default judgment and was meeting with the Court"); *Katahdin Paper Co., LLC v. U & R Sys.*, 231 F.R.D. 110, 112-113 (D. Me. 2005).  His continued insistence that he is entitled to default judgment is jarring.

The legal maneuvering by both counsel belies the utter tragedy that underlies the lawsuit. Mr. Shaw is no ordinary plaintiff:  He is a father who has lost his daughter.  There remains a serious question as to whether either Defendant should be held legally responsible for her death, but the Court expects the attorneys to conduct the rest of this litigation with the professionalism the tragic circumstances deserve.

## III.   CONCLUSION

After considering the *McKinnon* factors, the Court finds that they weigh in favor of N.B. The Court holds that it did not have personal jurisdiction over Mr. Tompkins to issue a default entry and that good cause exists under Rule 55(c) to overturn default entry in regards to N.B.

1. It is therefore ORDERED that the Recommended Decision of the Magistrate Judge (Docket # 29) is hereby AFFIRMED.

2. The Order granting the Motion for Entry of Default (Docket # 9) is hereby VACATED.

19

3. It is ORDERED that Max Shaw's Motion for Default Judgment (Docket # 7) is DENIED.

4. It is further ORDERED that 500516 N.B. Ltd.'s Motion to Dismiss (Docket # 11) is DENIED.

5. It is further ORDERED that 500516 N.B. Ltd.'s Motion to Strike (Docket # 33) is GRANTED in part and DENIED in part.

6. It is further ORDERED that Max Shaw's Motion for Leave to File Reply Under Local Rule 72.1 (Docket # 34) is GRANTED in part and DENIED in part.


SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2009