UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MAX SHAW, | ) | |
| personal representative for the | ) | |
| ESTATE OF SANDRA SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-09-264-B-W |
| | ) | |
| STEWART'S TRANSFER and | ) | |
| ADAMS TOMPKINS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION *IN LIMINE***

As there are factual issues that require jury resolution, the Court denies the Defendants' motion for summary judgment in this negligence and wrongful death claim. As the context and substance of the testimony of the Plaintiff's experts have not been fully developed, the Court dismisses without prejudice the Plaintiff's motion *in limine*.

**I. STATEMENT OF FACTS**

On June 26, 2007, operating a tractor-trailer owned by 500516 NB LTD, doing business as Stewart's Transfer, Adam Tompkins struck a moose in the southbound travel lane of I-95 in Howland. *Def.'s Supporting Statement of Material Facts* ¶ 2, (*DSMF*).[1] Traveling southbound on I-95 with Sandra Shaw as a

---

[1] Oddly, the Defendants captioned their statement of material fact as the "Plaintiff's Supporting Statement of Material Facts Pursuant to Me. R. Civ. P. 56(h)(1)." *See Pl.'s Supporting Statement of Material Facts Pursuant to Me. R. Civ. P. 56(h)(1)* (Docket # 49). The Court ignored the caption and

passenger, Kirk Sirois came upon the accident, struck the moose, which was still in the travel lane, lost control of his vehicle, and collided with the trailer. *DSMF* ¶¶ 2, 4, 6, 7. Tragically, Ms. Shaw and Mr. Sirois died as a result of injuries they sustained in the accident. *DSMF* ¶ 8. Max Shaw, the father and personal representative of Sandra Shaw, filed a complaint against Mr. Tompkins and Stewart's Transfer, alleging that their negligence caused the accident with the Sirois vehicle and led to Ms. Shaw's personal injuries and death. *Compl.* (Docket # 1).

On May 5, 2010, the Defendants moved for summary judgment.[2] *Defs.' Mot. for Summ. J.* (Docket # 48) (*Defs.' Mot.*); *Defs., Stewart's Tranfer's and Adam Tompkins' Mem. of Law in Support of Mot. for Summ. J.* (Docket # 50) (*Defs.' Mem.*). The Plaintiff responded on May 18, 2010. *Pl.'s Resp. to Defs.' Mot. for Summ. J.* (Docket # 51) (*Pl.'s Resp.*). The Defendants replied on June 1, 2010. *Defs.' Stewart Transfer's and Adam Tompkins' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J.* (Docket # 55) (*Defs.' Reply*).

On the same day, the Plaintiff moved *in limine* to exclude the testimony of Defendants' designated experts, Fawzi Bayan and Harvey Cohen. *Pl.'s Mot.* in Limine *to Exclude Expert Test.* (Docket # 47) (*Pl.'s Mot.* in Limine). The Defendants responded on May 26, 2010. *Defs. Stewart's Transfer's and Adam Tompkins' Opp'n to Pl.'s Mot.* in Limine *to Exclude Expert Test.* (Docket # 54) (*Defs.' Opp'n*). The

---

treated their statement of material fact as filed by the Defendants under Federal Rule of Civil Procedure 56 and Local Rule 56(b). There is no 56(h)(1) in the federal or district rules.

[2] Contrary to Local Rule 7(a), the Defendants filed a motion and a separate memorandum of law; Local Rule 7(a) requires that "[e]very motion shall incorporate a memorandum of law, including citations and supporting authorities." D. Me. Local R. 7(a).

Plaintiff replied on June 8, 2010. *Pl.'s Resp. to Defs.' Opp'n to Mot.* in Limine *to Exclude Expert Test.* (Docket # 57) (*Pl.'s Reply*).

## II. THE MOTION FOR SUMMARY JUDGMENT

### A. The Defendants' Position

The Defendants contend Ms. Shaw's case is predicated upon three legal propositions: (1) that the Defendants negligently struck a moose; (2) that the Defendants negligently left the moose "in an unilluminated condition and pulled to the side of the road . . . .;" and, (3) that the Defendants failed to put up warning signals or to take other reasonable steps to alert oncoming drivers to the presence of the moose carcass. *Defs.' Mem.* at 4. They assert that Maine imposes no legal duty on a traveling motorist to avoid an animal in the roadway, that there is no legal duty to remove an animal's carcass from the roadway or to place flares or warning triangles around the animal, and that if the Defendants owed such duties to Ms. Shaw, the Plaintiffs failed to present any evidence that the Defendants breached them. *Defs.' Mem.* at 4-7.

### B. The Plaintiff's Response

The Plaintiff responds that the case presents factual questions that can only be resolved by a jury. First, the Plaintiff contends that as an operator of a motor vehicle, Mr. Tompkins and by extension his employer, owed a duty to use ordinary care, and whether he did, is a factual issue. *Pl.'s Resp.* at 2. Regarding Mr. Tompkins' post-moose collision activities, the Plaintiff states: 1) that when a person creates a hazard, he assumes a duty of care to mitigate it, and 2) that there is a

3

factual issue as to whether Mr. Tompkins complied with 49 C.F.R. § 392.22, which sets forth standards for "stopped commercial motor vehicles," including placement of warning devices, and 29-A M.R.S. § 2068, which addresses vehicles parked on public ways. *Id.* at 3. Finally, the Plaintiff contends that whether the Defendants' negligence caused Ms. Shaw's death is an issue of proximate cause that must be resolved by the jury. *Id.* at 4-5.

C.  **Discussion**

A prima facie case of negligence requires a plaintiff to establish the following elements: "a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty." *Stanton v. Univ. of Maine Sys.*, 2001 ME 96, ¶ 7, 773 A.2d 1045, 1049. The Defendants claim the Plaintiff's case fails as a matter of law because they owed no duty to Ms. Shaw.

The Court disagrees. At its most basic, the operator of a motor vehicle has "a duty to 'use due or ordinary care under the attendant circumstances.'" *Reid v. Town of Mt. Vernon* 2007 ME 125, ¶ 16, 932 A.2d 539, 543 (quoting *Nadeau v. Fogg*, 145 Me. 10, 14, 70 A.2d 730, 732 (1950)). More specifically, the motorist has a legal duty "to see seasonably that which is open and apparent", *Parker v. Hohman*, 250 A.2d 698, 704 (Me. 1969), and the "failure to see in time what should have been seen, is negligence." *Spang v. Cote*, 144 Me. 388, 345, 68 A.2d 823, 826 (1949). In *Poirier v. Hayes*, the Maine Supreme Judicial Court sustained the appeal from a directed verdict of the plaintiff who, while walking on the right-hand side of the road at 1:00 a.m., was struck by a motorist. 466 A.2d 1261, 1264 (Me. 1983). The *Poirier* Court

4

emphasized that the evidence "presented a jury issue as to whether defendant could have and should have seen plaintiff in time to avoid collision." *Id.* at 1264. The duty is breached by "failing to see what, in the *exercise of ordinary care*, he should have seen." *Lewis v. Knowlton*, 1997 ME 12, ¶9, 688 A.2d 912, 914 (emphasis in original) (quotation marks and citation omitted). Whether a jury will conclude that Mr. Tompkins in the exercise of due care could have seen the moose but failed to do so is unknown; however, the Defendants are plainly incorrect in asserting that as a matter of law, Mr. Tompkins as a motorist had no duty. *Id.* ¶10, 688 A.2d at 914 (stating that "[w]hether a defendant has exercised due care is ordinarily a question of fact for the jury").

The Plaintiff is also correct that once Mr. Tompkins struck the moose, he owed a duty to minimize the dangers of the hazard he created. Maine law states that "absent a special relationship, the law imposes no duty to act affirmatively to protect someone from danger <u>unless the dangerous situation was created by the defendant</u>." *Reid*, 2007 ME 125, ¶ 17, 932 A.2d at 543 (quoting *Mastriano v. Blyer*, 2001 ME 134, ¶ 17, 779 A.2d 951, 955). If the "original conduct is tortious, . . . the connection between the original wrong-doing and the further harm is usually such as to make the actor's conduct in law the cause of such harm."[3] Restatement (Second) of Torts § 322 illust. c (1965) (*Restatement*).[4]

---

[3] There is authority that if an actor innocently creates a danger of future harm, he is "under a duty of care to exercise reasonable care to prevent such further harm." *Restatement* § 322. The Restatement uses an example of A who innocently runs down B on an unlighted country road and drives away, leaving B unconscious in the middle of the highway, where another car subsequently runs over him. *Id.* illus. 1. The Restatement says that the risk of the unconscious person being injured is "an entirely new harm from which A should have protected him and for which A is subject to liability to B, whether or not A would have been liable for the original harm." *Id.* The Court does not reach this

5

Third, although the Defendants claim that Mr. Tompkins fully complied with the Federal Motor Carrier Regulations and the Maine Rules of the Road, the Plaintiff contends that as a factual matter, Mr. Tompkins failed to place the emergency signals required by 49 C.F.R. § 392.22 following the accident. The proffered statements of material fact do not address with specificity whether Mr. Tompkins complied with the Regulation's requirements.[5] Further, each motorist has a "duty to park in a legal and safe place." *Reid*, 2007 ME 125 ¶ 7, 932 A.2d at 544. The evidence is that Mr. Tompkins pulled his vehicle to the side of the Interstate; however, whether he placed his tractor-trailer in a "safe place" in relation to the location of the moose carcass is a question of fact.

Finally, the Defendants claim that the Plaintiff cannot prove that their actions caused the injuries to and death of Sandra Shaw. *Defs.' Mem.* at 6-7. They point to the fact that a sample of Mr. Sirois' blood taken nearly three hours after the collision showed his blood alcohol level was 0.10. *Id.* at 7. Citing *Crowe v. Shaw*, they contend that because Mr. Sirois violated Maine's operating under the influence

---

question since there is sufficient evidence to withstand summary judgment on whether the Defendants were negligent in striking the moose in the first place.

[4] The Defendants argue that the "plaintiff would have this court specifically impose an obligation on motorists to place their lives at risk by requiring persons involved in a collision with wild animals to remove the animals from the roadway." *Defs.' Reply* at 4. To be clear, the Court is doing no such thing. The Defendants are conflating the existence of a duty with its breach. The Court concludes only that having created the hazard, the Defendants were obligated to minimize it. Whether Mr. Tompkins' post-accident actions met that duty is a factual question. *Reid*, 2007 ME 35, ¶ 14, 932 A.2d at 544 (stating that "[t]he existence of a duty of care is a question of law, while issues of the breach of that duty of care are usually questions of fact").

[5] The parties dispute whether 49 C.F.R. § 392.22(b)(1) gives a commercial driver a ten minute "grace period" before putting out warning devices. *Pl.'s Opp'n* at 3; *Defs.' Reply* at 4. By its terms, the Regulation mandates that a commercial driver "shall, <u>as soon as possible</u>, but in any event within 10 minutes, place the warning devices required by § 393.95 of this subchapter . . . ." 49 C.F.R. § 392.22(b)(1). Whether Mr. Tompkins could have placed warning devices out in the roadway before Mr. Sirois came upon the accident is a question of fact.

statute, they are entitled to summary judgment. *Id.* at 6-7 (citing *Crowe*, 2000 ME 136, 755 A.2d 509).

*Crowe* stands for precisely the opposite proposition. In *Crowe*, Penelope Crowe, coming down an icy hill in poor weather, lost control of her vehicle and struck an automobile operated by Scott Shaw. *Id.* 2000 ME 136, ¶ 3, 755 A.2d at 511. Mr. Shaw, who had a blood alcohol level of .06%, had pulled his car to the right, had come to a stop or almost to a stop when Ms. Crowe's vehicle struck his car. *Id.* The Law Court affirmed summary judgment in favor of Mr. Shaw, despite the results of his blood alcohol test. *Id.* ¶ 11, 755 A.2d at 512-13. The *Crowe* Court emphasized that the state of Maine does not recognize the doctrine of negligence per se, and "[a]lthough operating a motor vehicle while under the influence of intoxicating liquor is not negligence per se, it is evidence of negligent operation." *Id.* 2000 ME 136, ¶ 7, 755 A.2d at 512. The Court concluded that "[t]hese circumstances create a genuine issue of material fact regarding whether, at the time Shaw operated his motor vehicle, he was in breach of a duty of care because he was impaired as a result of the use of intoxicants." *Id.* Contrary to the Defendants' position, under *Crowe*, whether Mr. Sirois was "in breach of a duty of care because he was impaired as a result of the use of intoxicants" is "a genuine issue of material fact." *Id.*

The Defendants' last point is that because the police report in this case indicates that Mr. Sirois was solely to blame, there is no genuine issue of material fact as to whether the Defendants can be held responsible. *Defs.' Mem.* at 7. This

7

proposition is clearly erroneous. By investigating an accident, the police do not act as jurors determining civil fault.[6]

## III. MOTION *IN LIMINE*

The Plaintiff seeks to exclude the testimony of the Defendants' accident reconstruction expert, Fawzi Bayan, M.S., and toxicology expert, Harvey Cohen, Ph.D.

The Court dismisses the Plaintiff's motion as regards Mr. Bayan. From the submissions of the parties, his proferred testimony appears to be garden variety accident reconstruction evidence, which by education, training and experience Mr. Bayan appears well qualified to render. However, there is insufficient context to rule definitively whether there will be a sufficient foundation at trial for Mr. Bayan's proferred opinions. The Court would prefer to rule on the admissibility of Mr. Bayan's opinion testimony with a more complete record. The Plaintiff is free to renew this motion as trial approaches.

---

[6] Defendants simply attached to their memorandum in support of their motion for summary judgment three exhibits: a traffic accident report, an incident report, and a supplemental certificate of death. *Defs.' Mem.*, Attachs. 1, 2 & 3, *Traffic Accident Report*, *Incident Report, Supplemental Certificate of Death*. The Plaintiff objects to the "police reports" because they are not supported by affidavits and constitute inadmissible hearsay. *Pl.'s Resp.* at 1.

    The Plaintiff is correct. Maine Rule of Evidence 803(8)(B) clarifies that a police report does not fall within an exception to the hearsay rule and 29-A M.R.S. § 2251(7) states that an accident report made by an investigating officer and the 48-hour report "may not be admitted in evidence in any trial, civil or criminal, arising out of the accident." As neither document would be admissible at trial, neither may be considered at summary judgment.

    Further, in general, to be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of the Federal Rule of Civil Procedure 56(e). See 10A Wright, Miller & Kane, Federal Practice & Procedure § 2722 (3d ed. 1998).

    The Court concludes that police report and the incident report are not properly before the Court and strikes both exhibits.

The Court also dismisses the Plaintiff's motion on Dr. Cohen's proposed testimony. The Court is not yet convinced that Dr. Cohen is qualified to testify as to the physiologic impact of alcohol or that there is, in this case, a sufficient foundation for his opinions; nevertheless, rather than deny the motion and exclude his testimony on this scant record, the Court dismisses the motion without prejudice and will allow the Plaintiff to reinitiate the motion as trial approaches.

The Court does not reach whether the Defendants are entitled at trial to a special verdict under 14 M.R.S.A. § 163.

## IV. CONCLUSION

The Court DENIES the Defendants' Motion for Summary Judgment (Docket # 48); the Court DISMISSES without prejudice the Plaintiff's Motion *in Limine* (Docket # 47). The Court STRIKES Exhibits A and B attached to Defendants' Memorandum of Law in support of their Motion for Summary Judgment. (Docket # 50).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 22nd day of July, 2010